## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JITENDRA "JT" SHAH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:12-CV-02126** |
| | § | **JURY DEMANDED** |
| **TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE,** | § | |
| **Defendant.** | § | |

## PLAINTIFF'S FIRST AMENDED
## OPPOSED MOTION
## <u>TO RECUSE THE HONORABLE LYNN N. HUGHES</u>

Pursuant to 24 U.S.C. §144 and 28 U.S.C.§455, Plaintiff, Jitendra "JT" Shah ("Shah"), respectfully requests that, in this national origin and race discrimination case, the presiding judge, The Honorable Lynn N. Hughes, recuse himself because Judge Hughes' impartiality might reasonably be questioned, and/or because Judge Hughes has demonstrated actual bias or prejudice against Shah based on Shah's Indian nationality and Asian race, and against other similarly situated plaintiffs claiming national origin and/or race discrimination, as well. Shah further requests that the Chief Judge of the United States District Court of the Southern District of Texas reassign this case to one of the many other judges in this District whose impartiality cannot reasonably be questioned and who have not demonstrated actual bias or prejudice towards similarly situated victims of discrimination.

-1-

## I.  FACTS

**A.     <u>TDCJ's Alleged Race/National Origin Discrimination Against Shah</u>**

Shah was born in Gujarat, India in 1941. Shah is Hindu. Shah is dark skinned. Shah speaks with an accent, but has lived in the United States since 1967. Shah and his wife are proud United States Citizens, having earned their citizenship in 1988.[1]

Shah earned a Bachelor of Engineering (BE) in the disciplines of mechanical/electrical engineering from Maharaja Sayajiro University (MSU), Baroda, India in 1965. Shah came to the United States to study engineering and earned his Master of Engineering (ME) in mechanical/industrial engineering from Iowa State University in 1969. Shah completed his Master of Business Administration (MBA) from Chicago's Northwestern University in 1974. Shah is a Professional Engineer (PE), licensed by the Texas Board of Professional Engineers (TBPE) since 1979, and also licensed by the States of Illinois and New Mexico. Shah is a Certified Cost Engineer (CCE), licensed by the American Association of Cost Engineers (AACE) International.[2]

On February 9, 1998, the Texas Department of Criminal Justice ("TDCJ") hired Shah as an Engineer IV in its Facilities Division of TDCJ.[3] In order to voluntarily comply with the Texas Engineering Practice Act, TDCJ previously entered into an Agreement with Texas Board of Professional Engineers. In December of 1998, the Facilities Division Director

---

[1]  Ex. 1, Aff. Jitendra Shah ¶¶ 2, 3, 4, 11, 12 (Jan. 28, 2013).

[2]  Ex. 1, Aff. Jitendra Shah ¶¶6, 7, 8, 9, 10 (Jan. 28, 2013).

[3]  Ex. 1, Aff. Jitendra Shah ¶13 (Jan. 28, 2013).

agreed to provide Shah to Texas Correctional Industries on a full time basis, although Shah continued reporting to the TDCJ Facilities Division on a dotted line basis.[4]

Shah was promoted to Engineer VI in 1999. Briefly, Shah's position title was changed to Engineer V in 2001, which Shah challenged, and he was immediately reclassified back to Engineer VI.  In April of 2001, Texas Correctional Industries and Transportation and Supply were merged to form the Manufacturing and Logistics Division. Shah's duties doubled. [5]

In 2001, Shah filed a written grievance against the Deputy Director of TDCJ's Facilities Division, claiming discrimination and harassment based on national origin, race, and color. TDCJ issued an internal report that found there is "no evidence that Mr. Shah is being treated differently because of he is of East Asian decent [sic]."[6]

In March of 2004, TDCJ awarded retention pay raises to Facilities Division engineers. However, TDCJ did not award Shah any such raise. Shah's position title was again changed back to Engineer V in 2006. Shah's performance reviews consistently evidenced that he exceeded standards in all or most categories.[7]

In June of 2009, TDCJ awarded all Facilities Engineers—most of whom are White and natural born citizens—another retention pay increase. Once again, TDCJ did not award Shah a retention pay increase.[8]

---

[4]  Ex. 1, Aff. Jitendra Shah ¶¶13, 14, 15 (Jan. 28, 2013).

[5]  Ex. 1, Aff. Jitendra Shah ¶¶16, 17, 18, 19, 20 (Jan. 28, 2013).

[6]  Ex. 1, Aff. Jitendra Shah ¶¶20, 21 (Jan. 28, 2013).

[7]  Ex. 1, Aff. Jitendra Shah ¶¶22, 23, 24 (Jan. 28, 2013).

[8]  Ex. 1, Aff. Jitendra Shah ¶25 (Jan. 28, 2013).

In the period of 2004 to 2011, Shah repeatedly requested that TDCJ pay him consistent with the salaries paid to its other engineers. TDCJ failed and/or refused to do so. On March 1, 2011, Shah filed a written grievance with TDCJ, claiming pay inequity. In a March 4, 2011 meeting, Shah was handed a termination letter from TDCJ, purportedly terminating him as part of a "reduction-in-force." Notably, TDCJ terminated no other engineers at that time. Moreover, at the time TDCJ terminated Shah, engineer vacancies existed in the Facilities Division.[9]

After his termination, Shah applied for a vacant engineering position posted by TDCJ, for which he was qualified. TDCJ did not hire Shah.[10]

Shah timely filed and amended a Charge of Discrimination against TDCJ for national original, race discrimination, and retaliation with the EEOC. After exhausting his administrative remedies, Shah filed the instant lawsuit against TDCJ in the United States District Court for the Southern District of Texas on August 20, 2012. In this lawsuit, Shah alleges that TDCJ violated his rights under Title VII by subjecting him to:

- Discrimination with respect to compensation in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et. seq. because of his national origin, religion and/or race.

- Discrimination with respect to terms, conditions, and/or privileges of employment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et. seq. because of his national origin, religion, and/or race.

---

[9] Ex. 1, Aff. Jitendra Shah ¶¶26, 27, 28 (Jan.28, 2013).

[10] Ex. 1, Aff. Jitendra Shah ¶28 (Jan.28, 2013).

- Failure to hire in violation of  Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et. seq. because of his national origin, religion, and/or race.

- Retaliation for exercising his federally protected rights in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et. seq.

## B.  __The November 26, 2012 Hearing__

The District Court scheduled its second pre-trial conference for November 26, 2012. Before the conference, Jo Miller, Shah's counsel, became ill and notified the Court both by e-mail to Judge Hughes' Case Manager, Glenda Hassan, and by telephone to Judge Hughes' chambers that she would not be able to attend the conference in person.[11] Yet, despite Shah's counsel's advance notification of her illness, Judge Hughes proceeded with the pre-trial conference, without attempting to contact Miller, to determine whether she could participate by telephone.[12] Moreover, Judge Hughes made light of Miller's illness, stating that she (Miller) "needs to get a different doctor…"[13]

During the November 26, 2012 *ex parte* conference, Judge Hughes made numerous statements that would cause a reasonable person to harbor doubts about the Court's impartiality and, moreover, that reflect its actual bias and prejudice towards Mr. Shah based on the fact that he is Asian of Indian nationality and/or is a government employee.  Following are relevant excerpts from the November 26, 2012 conference:

---

[11]  Ex. 2, Aff. Jo Miller ¶ 7(Jan. 28, 2013)

[12]  Ex. 2, Aff. Jo Miller ¶ 7(Jan. 28, 2013).

[13]  Ex. 3, Transcript of Proceedings 3:3-5 (Nov. 26, 2012).

MR. COOK [Counsel for The State of Texas]: And there was testimony that [Shah] certainly knew that reductions—significant financial changes were in the works, as every employee of the State of Texas knew at that time.

THE COURT: All except deputy directors for public relations, people like that who are essential to the operations. The diversity director at Purdue makes $435,000 a year. Why don't they just hire people on ability and let diversity take care of itself? *And what does the diversity director do? Go around and painting students different colors so that they would think they were mixed?*

MR. COOK: Builds a record for the eventual lawsuit that will challenge the diversity on the one side and then on the other side.

THE COURT: You can't do that.

MR. COOK: It's an industry.

THE COURT: If you assiduously set about to be diverse instead of get the best people, aren't you violating the law?

MR. COOK: One could certainly argue that.

THE COURT: Anyway, would it be accurate to say from this chronology of his personnel file that he had bouts of being a difficult employee?

MR. COOK: He was never disciplined, I will say that. I don't think he was ever disciplined.

THE COURT: No. But *there's a level of obnoxiousness* like the law clerks that wouldn't make me fire them.

MR. COOK: I think based on his personnel file and certainly the testimony we heard, he was never satisfied with his salary. As an ongoing--

THE COURT: That puts him in common with every state employee.

MR. COOK: Well, that may very well be true.

THE COURT: Not true--I mean it's true that they're not happy, it's not true they're underpaid.[14]

---

[14] Ex. 3, Transcript of Proceedings 7:4-8:12 (Nov. 26, 2012).

-6-

....

MR. COOK: Yes, that's right Your Honor. So, our position would be that really this is all about money. It's not at all about race, religion, national origin, or anything else. It's about the money. And in fact, he admitted that in his deposition but for--

THE COURT: Well, what race is he to the extent those are meaningful at all?

MR. STONE [Counsel for State of Texas]: He's -- he's Asian, I think he said.

THE COURT: That doesn't --

MR. COOK: I thought he said he was Hindu.

MR. STONE: No. Yeah. When we asked him what race he was, he said his race was Hindu.

MR. COOK: Right. And his religion was also Hindu. So --

THE COURT: All right. So, *he's Caucasian*?

MR. COOK: No. He's Indian.

THE COURT: *They're* Caucasian.

MR. COOK: Okay.

THE COURT: All right.

MR. COOK: Okay.

THE COURT: That's where *we* came from.

MR. COOK: All right.

THE COURT: That's why *Adolph Hitler used the swastika*.

MR. COOK: Well --

THE COURT: It was a symbol of good luck --

MR. COOK: Right.

THE COURT: -- in going back in Sanskrit to the Aryan people which he claimed a bunch of Germans were. *They act a lot like Germans*....[15]
....

MR. COOK: And your Honor, nobody says he's not a good person.  C. F. Hazelwood will testify that he's a perfectly nice fellow. He didn't want to let him go, had to do it.

THE COURT: *The fact that he's the only Indian there is a fact in the department's favor. It would be real easy not to hire the first Indian*.

MR. COOK: It would be hard not to hire an Indian engineer, though.

THE COURT: *No.*

MR. COOK: A lot of engineers out there are Indian. And they actually offered a job to *one*[16] recently who turned it down.

THE COURT: Oh. But that's when you're hiring on merit. But sometimes people decide — *Eleanor Roosevelt said staffs of one color always work better*. They don't put that on the postage stamp. But when you hire somebody who applies and there's nobody else like them, isn't that what you're supposed to do?

MR. COOK: Sure.

THE COURT: And then you kept him a long time.

MR. COOK: Kept him a long time.

THE COURT: All right.  Well, I think it's time for you to move for summary judgment.[17]

---

[15] Ex. 3, Transcript of Proceedings 8:21-9:25 (Nov. 26, 2012)(emphasis added).

[16] The "one" to which Counsel refers is believed to be Hung T. Le, who is believed to be of Asian decent, speaking fluent Vietnamese.

[17] Ex. 3, Transcript of Proceedings 11:17-12:14 (Nov. 26, 2012)(emphasis added).

## III. ARGUMENT

Judge Hughes should recuse himself or, alternatively, be recused from this case because his actions and statements—as detailed above—call his impartiality into reasonable question and/or reflect an actual bias or prejudice against the Plaintiff, Shah, based on his Asian race, his Indian national origin, and/or the fact that he is a government employee. "One of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case." *United States v. Brown,* 539 F. 2d 467, 469 (5th Cir. 1976)(citations omitted). The "proper administration of justice requires of a judge not only actual impartiality, but also the appearance of a detached impartiality." *Id.*

The relevant statutes for recusal are 28 U.S.C.§144 and 28 U.S.C. §455. Both statutes are based on the notion that a fair trial before an unbiased judge is a basic fundamental right to which litigants are entitled under the Due Process Clause of the U.S. CONSTITUTION. *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F 2d 1157, 1165 (5th Cir. 1982).

The "disqualification statute," 28 U.S.C. §455, requires that:

> (a)     Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.....

*See* 28 U.S.C. §455(a).

> (b) He shall also disqualify himself in the following circumstances:
>
> (1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ....

*See* 28 U.S.C. §455(b)(1).

The goal of the "disqualification statute" is to promote public confidence in the judicial system by avoiding even the appearance of impartiality." *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F 2d 1157, 1165 (5th Cir. 1982).

The recusal standard under 28 U.S.C. §455 is objective, with the relevant inquiry being whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Trevino v. Johnson,* 168 F. 3d 173, 178 (5th Cir. 1999)(citations omitted). The "reasonable person standard" in this context contemplates a "well-informed, thoughtful and objective observer, rather than the hypersensitive cynical, and suspicious person." *Id.* at 179 (quoting *United States v. Jordan,* 49 F. 3d 152, 156 (5th Cir. 1995)(citations omitted).

The appellate court reviews a district court's decision for abuse of discretion. *Id.* at 178. The general rule of the Fifth Circuit is that in passing on questions of disqualification, the appellate court "should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on the party." *Id.* at 180.

As is evidenced in the recent holding in *Autry v. Fort Bend I.S.D.,* 2013 U.S. App. LEXIS 384 (5th Cir. Jan. 7, 2013), the appearance of impropriety is not lessened by the fact that the litigation would have come out that way anyway. *Health Services Acquisition Corp., v. Liljeberg* 796 F. 2d 796, 801 (5th Cir. 1986).

The "bias or prejudice" statute, 28 U.S.C. §144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. 28 U.S.C. §144.

The relationship between 28 U.S.C.§ 455 and 28 U.S.C. §144 has been a source of some confusion. Although §455 actually overlaps and subsumes §144, there are important differences.

First, §144 aims exclusively at the judge's actual bias or prejudice, while §455 not only deals with actual bias or prejudice, but also with the appearance of partiality.  Second, §144 is triggered only by a party's affidavits.

"Bias and prejudice can deflect course of judgment and affect measure of its judgments, and if a judge finds himself possessed of those sentiments, he should recuse himself, or if he does not, confront the likelihood of proceedings under 28 U.S.C. §144 to require him to do so." *United States v. Brown,* 539 F. 2d 467, 469 (5th Cir. 1976). When faced with a motion under §144, the court focuses on the affidavit. The affidavit is legally sufficient if it alleges facts, that, if true, would convince a reasonable person that bias exists. *Chitimacha Tribe v. Harry L. Laws Co.,* 690 F 2d 1157, 1165 (5th Cir. 1982). [18]

Judge Hughes' statements in the November 26, 2012 conference are reprehensible. First, Judge Hughes' gratuitous, uncritical reference to "Adolf Hitler" and the "swastika"--the architect and the symbol, respectively, of the Holocaust, the most heinous act of ethnic and religious mass murder in human history—are beyond the pale in a case of race and national origin discrimination and would lead any reasonable person to believe that Judge Hughes is, at a minimum, insensitive to victims of racial, ethnic, and religious discrimination.

---

[18] *See*, Ex. 1, Aff. Jitendra Shah ¶¶2-43 (Jan.28, 2013).

Second, in context, Judge Hughes' statement that Indians are "Caucasian," and not a distinct racial minority, would cause a reasonable person to believe that Judge Hughes would not comply with the prevailing law that Indians are a protected class under Title VII and 42 U.S.C. §1981. See, e.g. *Arora v. Starwood Hotels & Resorts Worldwide, Inc.,* 294 Fed. Appx. 159 (5th Cir. 2008)(employee born in India in protected class under Title VII); *Thomas v. Trico Prods. Corp,* 256 Fed. Appx. 658 (5th Cir. 2007)(employee of Indian ancestry and national origin in protected class under Title VII and 42 U.S.C. §1981).

Third, Judge Hughes' statement that "[t]hey" – referring to people of Indian decent – "act a lot like Germans" establishes that Judge Hughes harbors a bigoted, stereotyped view of Indians (as well as Germans). The fact that Judge Hughes gives vent to such bigotry and stereotype in a race/national origin lawsuit is all the more offensive.

Fourth, and in this same vein, Judge Hughes' gratuitous, critical remarks about college diversity programs—to wit, that these programs involve "painting students different colors so that they would think they were mixed"—would lead a reasonable person to believe that Judge Hughes would not comply with prevailing Supreme Court jurisprudence that racial/ethnic diversity and "affirmative action" programs are, in certain circumstances, constitutionally permissible. *Ricci v. DeStefano,* 557 U.S. 557, 582-628 (2009).

Fifth, Judge Hughes' statement that "every State employee" is not "happy" and not "underpaid" would cause a reasonable observer to believe that Judge Hughes could not be impartial to a state employee, such as Mr. Shah, in a case, such as the instant one, that involves the fairness and equality of a government employee's compensation.

Finally, based on the fact that Judge Hughes made these offensive statements in an *ex parte* hearing where Mr. Shah was neither present nor represented by counsel and expressly invited the government to file a motion for summary judgment at the end of the hearing, with very minimal discovery, a reasonable observer would conclude that Judge Hughes had already pre-judged the case in favor of the government.

In light of these facts, Judge Hughes must recuse himself or be recused under 28 U.S.C. §455 and 28 U.S.C. §144.

Moreover, Judge Hughes' statements and actions in this case are not anomalous but, rather, consistent with a demonstrated pattern and practice of bias and prejudice against alleged victims of discrimination. Most recently, in *Autry v. Fort Bend I.S.D.* 2013 U.S. App. LEXIS 382 (5th Cir. Jan.7, 2013), the Fifth Circuit condemned Judge Hughes for making inappropriate racially-insensitive remarks regarding the plaintiff in an employment discrimination case. *Autry at* *12. Additionally, in *Equal Employment Opportunity Commission v. WC&M Enterprises, Inc.,* 496 F.3d 393 (5th Cir. 2007), the Fifth Circuit reversed a decision by Judge Hughes, holding that, "without citation to any authority," the judge had rejected the plaintiff—an Indian Muslim's—evidence of discriminatory conduct "because it was not 'objective'" – a result the Fifth Circuit found "untenable." *Id*. at 398. Additionally, the Fifth Circuit sharply criticized Judge Hughes' failure to draw all reasonable inferences in favor of the non-movement. *Id.* Judge Hughes was further rebuked by the Fifth Circuit for finding that the EEOC could not prevail on the basis of national origin discrimination because none of the alleged harassing conduct specifically related to the fact that Rafiq is from India.

Indeed, Judge Hughes has frequently been reversed by the Fifth Circuit for his rulings in favor of employers and against individual employees. *See,* e.g. *Aryain v. Wal-Mart Stores Tex., LP,* 534 F. 3d 473 (5th Cir. 2008) (Judge Hughes was reversed by the Fifth Circuit for failing to consider the employee Plaintiff's prima facie case of harassment); *Burton v. Banta Global Turnkey Ltd.,* 170 Fed.Appx. 918 (5th Cir. 2006) (reversing Judge Hughes' grant of summary judgment to the employer in a COBRA case involving the failure to notify employee of termination) ("A district court cannot consider inadmissible evidence contained in affidavits."); *Machinchick v. PB Power, Inc.,* 398 F.3d 345 (5th Cir. 2005) (reversing Judge Hughes and remanding for trial in ADEA case, finding plaintiff had adduced a prima facie case and evidence that age was a motivating factor for the discriminatory act); *Equal Employment Opportunity Commission v. Dunbar Diagnostic Services Inc.,* No. 03-20292 (5th Cir. 2004) (reversed and remanded, noting that "the trial judge may have been disapproving toward the EEOC and Gonzalez…"); *Vela v. City of Houston,* 276 F.3d 659 (5th Cir. 2001) (reversing and rendering judgment for Houston paramedics in FLSA case); *Equal Employment Opportunity Commission v. R.J. Gallagher Co.,* 181 F.3d 645 (5th Cir. 1999)(affirmed in part; vacated in part); *Fine v. GAF Chemical Corp.,* 995 F.2d 576 (5th Cir. 1993)(aff'd in part and reversed in part).

Additionally, in *Kafi v. Bakers Footwear Group, Inc.,* 4:10-CV-02913 (S.D. Texas - Houston 2010), Judge Hughes made racially offensive remarks regarding two Vietnamese lawyers—Trang Q. Tran and Doanh T. Nguyen— who were serving as counsel in that case.

-14-

Specifically, Judge Hughes suggested that, based on their national origin (Vietnam), these two Vietnamese lawyers should move to North Korea to practice labor law:

> THE COURT: Do you do a lot of labor law?
>
> MR. NGUYEN: Yes, Judge.
>
> THE COURT: Okay. Why don't you guys move to North Korea? Because this is the entire body of North Korean labor law.
>
> MR. TRAN: Are you serious?...[19]

Once again, Judge Hughes' unsolicited, discriminatory remarks in *Kafi* would lead a reasonable observer to conclude that Judge Hughes harbors a bias and prejudice towards persons of color, protected national origin, and race and could not be fair to Mr. Shah—a person of color— Asian—Indian—in this case.

## IV. Conclusion

Because a reasonable observer would question Judge Lynn N. Hughes' impartiality in this case and/or because the judge has demonstrated an actual bias or prejudice against Mr. Shah that will prevent Shah from receiving a fair trial, Judge Hughes should recuse himself pursuant to 28 U.S.C. §455 and/or 28 U.S.C. §144. Mr. Shah's case offers exceptional sensitive circumstances that demand recusal. Additionally, Mr. Shah respectfully requests that the Chief Judge of the United States District Court for the Southern District of Texas reassign this case to another judge of the United States District Court for the Southern District of Texas whose impartiality and fairness cannot reasonably be questioned.

---

[19] Ex. 4, *Kafi v. Bakers* Transcript of Conference 13:8-23 (Oct. 15, 2010).

Respectfully submitted,

LAW OFFICE OF JO MILLER, P.L.L.C.
505 North Main
The Parsonage
Conroe, Texas  77301
Tel. (936)539-4400
Fax. (936)539-4409
jmiller@jomillerlaw.com

By: */s/ Jo Miller*　　　　　　　　　
　　JO MILLER
　　Texas Bar No. 00791268
　　Southern District Bar No. 20385
　　Attorney-in-Charge for Plaintiff,
　　Jitendra Shah

Of Counsel:

By: */s/ Scott Newar*　　　　　　　　
　　Scott Newar
　　State Bar No. 14940900
　　LAW OFFICE OF SCOTT NEWAR
　　700 Louisiana, Suite 2550
　　Houston, Texas 77002
　　Telephone: 713-226-7950
　　Fax: 713-226-7181
　　newar@newarlaw.com

## CERTIFICATE OF CONFERENCE

I, Jo Miller, hereby certify that contacted Allan Cook and Jonathan Stone, counsel for Defendant, TDCJ, via e-mail on January 24, 2013 regarding this motion.  I also asked Mr. Cook directly prior to the January 24, 2013 hearing. Mr. Cook advised that Defendant opposes this motion.

*/s/ Jo Miller*　　　　　　　　　

-16-

Jo Miller

## **NOTICE OF ELECTRONIC FILING**

I, Jo Miller, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing document in accordance with the Electronic Case Files System of the Southern District of Texas, on this the 31st day of January, 2013.

*/s/ Jo Miller*
Jo Miller

## **CERTIFICATE OF SERVICE**

I hereby certify that, a true and correct copy of the foregoing was served electronically on Defendant's counsel on January 31, 2013.

*/s/ Jo Miller*
Jo Miller
Attorney-in-Charge for Plaintiff,
Jitendra Shah