| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Jitendra Shah, | § § § § § § § § § | |
| Plaintiff, | | |
| versus | | Civil Action H-12-2126 |
| Texas Department of Criminal Justice, | | |
| Defendant. | | |

# Opinion on Recusal

1. *Background.*

    In April of 2011, the Texas Department of Criminal Justice fired Jitendra Shah. In August of 2012, he sued it for retaliation and for discrimination based on age, race, national origin, and religion. On the morning of November 26, 2012, a second pre-trial conference was held. Shah's counsel called the court and left a message that she would not attend because she was ill. Shah has moved to recuse the court based on conversations at that conference. The court will continue to preside.

2. *The Conference.*

    The conference had been set for nine days. Shah's counsel knew that to reach Houston for a 10:00 a.m. hearing the counsel for the prison would have to drive three hours. At 8:09 a.m., she e-mailed the court to say she had the "crud." The email said she would not be at work or the hearing. She gave a telephone number where she could be reached without asking to appear by telephone. Shah's counsel also left a voice mail on the chamber's telephone. It said that she was not attending. Shah did not attend. It is customary for parties to appear only through their lawyer at the preliminary conferences.

    The court allows non-local counsel who ask for permission – well in advance – of a conference to appear by telephone. Neither the e-mail or the voicemail asked the

court to continue the conference nor was a request to continue filed.

Shah says that the conference was held *ex parte*. He had been notified of it nine days earlier. Although Shah was not represented at the conference, that was a choice by his counsel, not the court. Shah's absence did not render the conference *ex parte* because he had notice. Counsel may not continue hearings by simply not attending.

Even with that predicate, nothing substantive was done at the conference. Rather than waste the defendant's trip, the court did inquire about the progress of discovery and the schedule for filing motions.

3. *The Comments.*
   A. *Excuse.*

Shah says the court made light of his counsel's illness. That is an impossibility because the court did not know then or now what her problem was. The court did remark that Shah's counsel needed a different doctor if "crud" was a medical diagnosis. That humor was directed to a doctor, if anyone.

   B. *Diversity.*

Shah says that the court's comments about college diversity programs demonstrate an inability to follow jurisprudence on affirmative action.

This case is not about affirmative action. A passing comment on bureaucratic make-work waste rather than seeking the best students says nothing about preferences under the law. Shah cannot suggest that paying a staff member in the admissions process at a university one-half a million dollars sounds reasonable. The court has routinely applied laws that it thought were wise equally with those that it thought were unwise. A judge is not required to believe that the tax code, say, consistently makes sense both to pay and apply those taxes.

   C. *State Workers.*

Shah says that the court's remarks about state employees demonstrate a bias against Shah, a former state employee.

An aside about state workers' happiness and pay does not show bias. Complaining about pay when one is not underpaid is not limited to state workers; everyone would like to have more money.

Shah also twists these statements as being directed at him. They were directed at the only state employees at the conference – defendant's counsel.

D.   *Swastika.*

Shah says that this court's discussion of the swastika and "uncritical" reference to Hitler shows that it is insensitive to victims of racial, ethnic, and religious discrimination.

The reference to Hitler's adoption of the swastika was not "gratuitous" or "neutral." It was a discussion – or monologue – about how a Sanskrit word for good luck became the symbol of a North-European political movement.[1] The National Socialists of the 1930s used the swastika because of its connection to Aryan peoples who lived in Iran and northern India.[2] The Nazis said that the Aryans – who used the swastika – were from Nordic Europe, instead of east of the Caucasus Mountains. All of this invention or delusion was an attempt to bolster their claim that Germans were a superior race descended from pure Aryans.[3]

The comment was not uncritical, it was historical.[4] Would an uncritical reference to Hitler make one a Nazi sympathizer?

When the court said that "they act a lot like Germans," that was a criticism of the current in German thought – Hegel is an example – that has called for a return to a mythical glory of the race when they were dominant.[5]

E.   *Caucasians.*

Shah says that the reference to Caucasians shows that the court does not recognize Indians as a protected class. Although Caucasian is commonly understood

---

[1] Ernest Gellner, *Nations and Nationalism* 49 (R.I. Moore et al. eds., 1983).

[2] John Keay, *India: A History* 21 (2000).

[3] Gellner, *supra* note 1, at 124.

[4] Ernest Gellner, *Nationalism* 35 (1997).

[5] Gellner, *supra* note 1, at 48 (citing G.W.F. Hegel, *Lectures on the Philosophy of World History* 134 (H.B. Nisbet, tr. 1975)).

to mean white people, the word in anthropology refers to a cluster of peoples stretching from Europe through the Caucasus Mountains to India. The court was not confused because a few lines later it referred to Aryans synonymously with Caucasians.

The categories of people evolve and flip. How the Bureau of the Census or the Equal Employment Opportunity Commission categorize people changes frequently. Anthropologists change the way they classify peoples, too; however, none of them thinks that these labels are ever anything better than a weak generalization, a rough approximation.[6] Discussion of the problems of racial identities and their misuses is part of working through facts and reasoning to eliminate those unprincipled uses.

Shah was born in India. In his affidavit, paragraph 38, Shah says: "I guess I answered Hindu. Whether Hinduism is a religion or culture could be debated forever. I am considered Asian by birth, although the labels don't really quite fit." Hindu is a religion or culture, and it may be a shorthand for underlying racial classification.[7]

A frank discussion of race is required in a case brought by a man claiming discrimination based on his race. Caucasian is the old-fashioned crude allocation of seven billion people into three groupings. Groups that broad may have minor genetic unity, but knowing that is inadequate for pubic decision-making. If he lost his job because of his origin, religion, or race, the law protects him.

F.   *Eleanor Roosevelt.*

The court's mention of Eleanor Roosevelt's preference for staff of one race illustrates that what a person does and what a person says are not always the same. The court does not believe that a staff of one color works better together; the court has no experience with domestic staffs of more than one. The court was not approving of her racial hiring. It was a criticism.

G.   *Engineers & Indians.*

If an employer were to discriminate against a class of people, it is easier to never

---

[6] Ashley Montagu, *Man's Most Dangerous Myth: The Fallacy of Race* 50–51 (6th ed. 1997).

[7] Thomas Sowell, *Race and Culture: A World View* 6–7 (1994).

hire someone from that class than hire them and then fire them ten years later. That is the point of the court's statement that it would be easy not to hire the first Indian person in a workplace; that is how people discriminate. When the department's counsel said that it would be hard not to hire an Indian engineer, the court responded that that could be true if an employer hires based on merit. That was a recognition of Texas's many capable engineers with a connection to India.

The court's asserted hostility to Indians would surprise its immigrant or first-generation Indian doctors, friends, law clerk, and interns.

4. *Cases.*

Shah mentions other cases to show the court's bias. In a decision that was fully affirmed on appeal, the court of appeals did not condemn this court for an "inappropriate racially insensitive remark." It merely said that this court was mistaken when it did not view another person's hostile comment as a racial slur. That case was not about someone from the Indian Subcontinent.

Shah accuses this court of racially hostile remarks in a separate case three years ago. A friend of the court had traveled to North Korea; she brought back books of North Korean law on labor and land. At the end of a conference, though the transcript does not show this, the court picked up one of the booklets of about 60 pages and showed it to counsel, asking why they did not move to North Korea to practice labor law. The rhetorical question illustrated that it would be easy to practice labor law in North Korea, because there is none. The court next showed them the land volume. The group agreed that the complexity of America is preferable to the absence of law badly veiled by impossibly short books of laws. The conversation had nothing to do with the background of the two lawyers sitting before it and everything to do with the limitations of North Korean law.

The conversation was not an attack on the non-Indian, non-Korean lawyers or the people populating the Korean Peninsula – only its current government.

5. *Shah's Affidavit.*

All the court knows about Shah has been gleaned from the papers and talk by counsel in this case – no contact with him in or out of court.

In his affidavit, paragraph 33, Shah says the court attributed a level of

obnoxiousness to those who are born in India. Had his counsel attended the conference, she would have seen that the remark, a reference to underpaid state-employees – not Indians – was accompanied by a gesture toward the law clerks. The court was poking fun at them.

When the court asked whether it was the state's position that Shah had been a difficult employee, it was not stating an opinion – personal or professional. In addition to the court's not being able to discuss the law's classifications, Shah wants the court not to ask about the facts of the case. If the court characterized him as difficult, it would have had nothing to do with people who are born in India or anywhere else. He freely replaces pronouns with a noun of his choosing and supplies tone not present in the transcript or conference.

6.  Conclusion.

Jitendra Shah has accused this court of being biased against him. What it knows about him is wholly derived from the case. Discussion of history and race does not evince a bias against people who are Indian, Hindu, both, or anyone else. Incidently, the references are to works from the court's private library.

Shah and the court are not the problem; a casual sampling of the deposition the prison tried to take of Shah is revealing.

This court is committed to equal justice under law and applying it with a fine impartiality. The motion to recuse will be denied.

Signed on September 16, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge